COMMONWEALTH *vs.* GUNTHER G., a juvenile.

No. 97-P-1044.

Suffolk. February 2, 1998. - June 23, 1998.

Present: PERRETTA, JACOBS, & LENK, JJ.

*Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search and seizure. *Firearms.*

Police officers had reasonable suspicion, based on three recent radio transmissions regarding three men, a dog, an assault, and gunfire at a certain intersection, to stop and make a threshold inquiry of three males walking alone in the same area with a dog at a late hour, and when one of the men suddenly ran away, unprovoked, the officers had reasonable suspicion to pursue him: the firearm that the defendant discarded while fleeing was lawfully seized and was properly admissible in evidence. [117-119]

COMPLAINT received and sworn to in the juvenile session of the Dorchester District Court Department on June 26, 1996.

On appeal to the Boston Division of the Juvenile Court Department, a motion to suppress evidence was heard by *June C. Miles,* J.

The case was transferred to the Appeals Court by *Charles Fried,* J., following his allowance of the Commonwealth's application for an interlocutory appeal in the Supreme Judicial Court for the county of Suffolk.

*Stephen D. Fuller,* Assistant District Attorney, for the Commonwealth.

*Timothy P. O'Connell* for the defendant.

JACOBS, J. Charged with possession of a firearm without a license (G. L. c. 269, § 10[*a*]), the defendant moved to suppress a handgun which he is alleged to have discarded while being pursued by a Boston police officer. A Juvenile Court judge allowed the motion, concluding that the police did not have reasonable suspicion to pursue the defendant and, therefore, violated his rights under art. 14 of the Massachusetts Declaration of Rights. The Commonwealth appeals. We reverse.

We review according to the standard recited in *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980), and summarize the undisputed material facts found by the judge. A Boston police officer, working alone in a marked cruiser in the Dorchester area of that city, heard three radio transmissions beginning at about 12:25 A.M., on June 26, 1996, reporting that a fight was in progress at Winter and Church Streets in Dorchester involving three men, one with a firearm; that shots were fired; and that someone was being attacked by a dog. The officer arrived at Winter Street shortly thereafter[1] and saw three males, ranging in age from fourteen to eighteen years, walking down Winter Street, one of them carrying a pit bull puppy. He stopped his cruiser about twenty to twenty-five feet away, got out, and asked the three males to come over to talk with him. While two of them walked toward the officer, the defendant remained behind, then began backing away. Pointing in the direction of Church and Winter Streets, the defendant said, "they're down there." The officer walked toward the defendant, noticing that another officer who had arrived in a cruiser was now at his left side and approaching the defendant. The first officer again asked the defendant to talk to him, but when he approached within about ten feet, the defendant ran away. Running after him, the officer saw him make a throwing motion. Later, upon returning to that area, police discovered a firearm.

"[N]ot every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). The officer's approach without any direction to stop, coincident with his asking first the three males, and then the defendant a second time, to talk to him, did not constitute a seizure. See *Commonwealth* v. *Sanchez*, 403 Mass. 640, 644-645 (1988); *Commonwealth* v. *Fraser*, 410 Mass. 541, 543-544 (1991); *Commonwealth* v. *Stoute*, *supra* at 789-790. Moreover, even though the encounter involved two uniformed officers who arrived in marked cruisers, "we look to circumstances beyond the show of governmental authority inherent in the mere presence of the police . . . [for] 'circumstances that might indicate a seizure, even where the person did not attempt to leave.'" *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 560 (1989), quoting from *United States*

---

[1] The officer, the only witness at the suppression hearing, testified he arrived at Church and Winter Streets at "roughly" 12:30 A.M.

v. *Mendenhall*, 446 U.S. 544, 554 (1980). See 4 LaFave, Search and Seizure § 9.3(a) (3d ed. 1996 & Supp. 1998). This record contains no evidence of any intimidating or assertive conduct of the officers prior to the defendant running off which might convert an investigative encounter into a freedom restricting seizure. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *United States* v. *Mendenhall, supra* at 555.

Assuming that a seizure (or stop) occurred when the officer commenced his pursuit of the defendant, see *Commonwealth* v. *Stoute, supra* at 789, we turn to the question of whether the requisite reasonable suspicion existed at that time. "In determining whether an officer acts reasonably in initiating a threshold, or investigatory, stop, we view the circumstances as a whole, see *Commonwealth* v. *Williams*, [422 Mass.] 111, 116 (1996), and consider the 'specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience.' *Terry* v. *Ohio*, [392 U.S. 1, 27 (1968)]." *Commonwealth* v. *Stoute, supra* at 790. "[A] police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996). That suspicion must be based on specific articulable facts and reasonable inferences drawn from them. *Ibid.* See *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 628 (1993).

While the radio reports conveyed no particularized descriptions of the three men or the dog involved, the officer's sighting of three males, one carrying a pit bull dog, close by the area where the shooting was reported, and with no one else on the street at that late hour, reasonably supports a conclusion that they were persons possibly involved in the reported incidents.[2] Contrast *Commonwealth* v. *Cheek*, 413 Mass. 492, 496-497 (1992) (lack of detail in radio description of a suspect was

[2]Tapes of the radio transmissions, based on several calls to police 911 operators, were reviewed at the motion hearing in this case. Compare *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992); *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 526 (1995). There is no dispute about the reliability of the information conveyed by them, which, in any event, concerned events in progress or which had occurred recently. See *United States* v. *Bold*, 19 F.3d 99, 102 (2d Cir. 1994) ("Reasonable suspicion depends upon both the content of the information possessed and its degree of reliability").

inadequate to single out defendant from other males in the area). Moreover, the defendant's backing away, pointing and stating, "they're down there," is the type of "[e]vasive conduct, although stopping short of headlong flight, [which] may inform an officer's appraisal of a streetcorner encounter." *United States* v. *Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

The crimes which the reports reasonably may have reflected include assault, assault with a dangerous weapon, and discharging a firearm within five hundred feet of a dwelling or other building. See G. L. c. 269, § 12E. Also, the possession of a firearm by a minor may be viewed as presumptively illegal. See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 70 n.10 (1997). Here, the contemporaneous reports were of actual assault and gun fire. Contrast *Commonwealth* v. *Alvarado*, 423 Mass. 266, 270-271 (1996) (no justification for reasonable suspicion of criminal conduct in mere report of the carrying of a concealed weapon).

We need not decide whether the radio reports coupled with the officer's initial observations may have been sufficient, standing alone, to justify a seizure because the defendant's unprovoked flight, as distinguished from a refusal to respond or a resumption of his walk, considered with the other circumstances, certainly tipped the scale of justification at that point, giving rise to reasonable suspicion and a right to pursue. See *Commonwealth* v. *Sanchez*, 403 Mass. at 646; *Commonwealth* v. *Mercado*, 422 Mass. at 371; *Commonwealth* v. *Stoute*, 422 Mass. at 791. See also *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984); *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. at 630-632; 4 LaFave, Search and Seizure § 9.4(f).

*Order granting motion to*
*suppress reversed.*