Connolly, J.
The defendants, Trevor Banton (“Banton”) and Dijuan Santos (“Santos”), have been charged with possession of a class B substance with intent to distribute and possession of a class B substance with intent to distribute in a park zone.[1] The defendants seek to suppress statements made and evidence seized during a warrantless search of their persons following a stop of the motor vehicle in which they were passengers. The defendants allege that the police did not have reasonable suspicion to make the initial stop. For the following reasons, this court ALLOWS the defendants’ motions.
FINDINGS OF FACT
On June 23, 1998, Officer William Gross (“Gross”), an officer assigned to the Boston Police Department Drug Control Unit, was conducting a routine drug investigation at the corner of Westville and Geneva Streets in Dorchester. Gross knew the location to be a “high crime” area where he had made numerous drug arrests in the past. Gross watched a red car carrying four black males approach the area. Banton, Santos, and another unidentified passenger got out of the car and walked to the front of a vacant store. Within thirty seconds, an unidentified black male in a yellow shirt approached them. The three men huddled around the man in the yellow shirt. After approximately fifteen seconds, Banton returned to the car and Santos went into an alleyway. Santos emerged from the alleyway less than one minute later with his left hand concealed in his clothing. Gross suspected that Santos had a weapon. The men got into the car and drove off.
Gross decided to question the men. He followed the car and activated his blue lights. He radioed for backup stating, among other things, “there might be something in this one.” While pursuing the car, Gross observed the passengers in the back seat turn and look back toward him. The car in which the defendants were riding continued until a marked cruiser, with its lights and sirens activated, pulled up to it. The defendants pulled over in front of 116 Adams Street, Dor-chester opposite Ronan Park.
The officers got out of their vehicles and approached the red car. Santos, a passenger in the car, got out and started to walk away from the scene. Gross ordered Santos back to the car. Gross frisked Santos and discovered United States currency and a plastic bag containing crack cocaine in the left pocket of Santos’s jacket. Gross then cuffed Santos and placed him under arrest.
Detective Lisa Lehane (“Lehane”), one of the backup officers, approached the defendants’ vehicle. She saw Banton, who was then seated in the back seat of the car, reach toward his hip. Lehane removed Banton from the car. As he stepped from the car, Banton dropped an item that Lehane recognized as a rock of crack cocaine. Lehane shouted out, “It’s crack.” Banton punched her in the face and attempted to flee the scene. The officers subdued Banton and placed him in handcuffs. Subsequently, the officers searched him and found a plastic bag containing crack cocaine in his pants pocket.
RULINGS OF LAW
A police officer may stop a person and conduct a threshold inquiry if the officer has reasonable suspicion that the person has committed or is committing a crime. Terry v. Ohio, 392 U.S. 1, 22 (1968). A stop occurs when a police officer initiates a pursuit with the obvious intent of requiring the person to submit to questioning. Commonwealth v. Stoute, 422 Mass. 782, 789 (1996); Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981). The reasonableness of a stop must be evaluated based upon specific and articulable facts known to the officer in light of his training and experience. Commonwealth v. Silva, 366 Mass. 402, 406 (1974). This reasonableness requirement applies *40 to motor vehicle stops. Id. A mere “hunch” that an occupant may be involved in criminal activity is not sufficient to justify a stop of a vehicle. Commonwealth v. Ellis, 12 Mass.App.Ct. 476, 477 (1981).
The defendants contend that there was no reasonable suspicion that they were involved in criminal activity at the time they were stopped. In this case, the stop occurred when Gross activated his blue lights with the intent of pulling over the car and questioning the occupants.[2] Commonwealth v. Stoute, supra at 789. Prior to the stop Gross had seen the defendants engage in a brief huddle with an unidentified male. He did not see any exchange take place between any of these individuals. Although these men were observed in a high crime area, presence in high crime area is not sufficient to give rise to reasonable suspicion. Commonwealth v. Cheek, 413 Mass. 492, 487 (1992). Further, the fact that Gross thought Santos may have possessed a weapon does not warrant a reasonable suspicion that he was illegally carrying the firearm. Commonwealth v. Couture, 407 Mass. 178, 182-183 (1990). I find that there were not sufficient facts known to the police officers at the time of the stop to form reasonable suspicion.
It is well settled law that any evidence obtained through an illegal stop or seizure is a “fruit of the poisonous tree” and may not be admitted into evidence against a defendant. Wong Sun v. United States, 371 U.S. 471, 485-486 (1963). This principle applies to all evidence stemming from an illegal motor vehicle stop. Commonwealth v. LeBlanc, 407 Mass. 70, 75 (1990). This rule applies to physical evidence, Commonwealth v. Ferrara, 376 Mass. 502, 505 (1978), and statements of a defendant. Commonwealth v. O'Connor, 21 Mass.App.Ct. 404, 406 (1986). It is clear from the testimony of Officers Gross and Lehane that all of the physical evidence in this case was obtained only after the police stopped the car. Additionally, all statements made by the defendants followed the stop. Because I find that the stop was illegal from its inception, all evidence flowing from it is the fruit of a wrongful police action and is, therefore, not admissible.
ORDER
Based on the foregoing, the defendants’ motions to suppress are ALLOWED.

Canton has also been charged with assault and battery on a police officer and resisting arrest. In addition, Santos has been charged with being a habitual offender.

Although the police may stop a car for a traffic violation, Gross testified during cross examination that the driver of the red car did not violate any traffic laws.