COMMONWEALTH *VS.* ELSIE RAMOS.

Hampden. November 5, 1999. - January 5, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Fruits of illegal search. *Evidence,* Photograph. *Words,* "Seized."

This court concluded that, where police, without reasonable suspicion or probable cause, deprive an individual of the ability to remain in or leave a residence without police interference, that person is seized for purposes of art. 14 of the Massachusetts Declaration of Rights, and that evidence seized as a result of such an unlawful seizure of a person was properly suppressed. [547-551]

INDICTMENTS found and returned in the Superior Court Department on November 7, 1997.

A pretrial motion to suppress evidence was heard by *C. Brian McDonald,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Marshall,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*Bonnie G. Allen* for the defendant.

COWIN, J. We granted the Commonwealth's application for direct appellate review to decide whether, under art. 14 of the Massachusetts Declaration of Rights, a person is seized when the police congregate outside an apartment, state that they will not leave until an individual comes out, and threaten to have the fire department break down the door if the person does not comply.[1] We conclude that a person is seized, for the purposes

---

[1]The Commonwealth's application for leave to appeal from the allowance of the motion to suppress was allowed by a single justice of this court who ordered the appeal entered in the Appeals Court.

of art. 14, when the police, without reasonable suspicion or probable cause, deprive an individual of the ability either to remain in or leave a residence without police interference.[2]

The defendant was charged with unlawful distribution of cocaine in violation of G. L. c. 94C, § 32A (*c*), and distribution of drugs in a school zone in violation of G. L. c. 94C, § 32J. Prior to trial, the defendant moved to suppress photographs taken of her by the police. The photographs were used to identify her as a cocaine distributor. Following an evidentiary hearing, a judge in the Superior Court allowed the motion. The motion was properly allowed.

We recite the relevant facts found by the judge who heard the motion to suppress. While we do not disturb subsidiary findings when warranted by the evidence, ultimate findings and conclusions of law, particularly those of constitutional dimension, are open for independent review on appeal. *Commonwealth* v. *Cruz*, 373 Mass. 676, 682 n.2 (1977), and cases cited.

During a drug investigation, Massachusetts State Trooper Henot Rivera made an undercover purchase of crack cocaine from a Hispanic female at a Holyoke apartment. Trooper Rivera later described the female distributor to Lieutenant Kenneth Sullivan of the Massachusetts State police and Detective Aurelio Garcia of the Holyoke police department. Detective Garcia believed he recognized the description as matching that of the defendant. However, he could not substantiate his conclusion and the police had no photograph of the defendant from which Trooper Rivera could make a positive identification.

The police conducted surveillance of the apartment where Trooper Rivera purchased the drugs, but were unable to obtain a photograph of the defendant. Three days after the purchase, Lieutenant Sullivan and three other officers returned to the apartment in order to identify Rivera's distributor. By looking into the apartment from positions outside the building, Lieutenant Sullivan was able to observe a male and female inside the apartment. He recognized the male as William Lanoue.

The police devised a ruse to lure the defendant from Lanoue's

---

[2]We limit our analysis to art. 14 of the Massachusetts Declaration of Rights, the only ground argued by the defendant before the motion judge.

apartment in order to take her photograph.[3] The officers knocked at the apartment door. Lieutenant Sullivan identified himself and asked to see the defendant. He told her that the police had received a report of a disturbance and wanted to be certain that the defendant was not harmed. Lanoue and the police officer exchanged remarks through the door, with Lanoue becoming upset and yelling at the officers.

Through the door the defendant told Lieutenant Sullivan she had not been harmed. Undeterred, Lieutenant Sullivan repeatedly requested that the defendant leave the apartment so he could make a personal observation of her. He told the defendant that the police would remain by the door until she complied. He also threatened to call the fire department to break down the door. During this exchange, other officers were calling to the defendant from the street.

The officers' requests continued. Eventually the defendant left the apartment. The defendant testified that she passed down the stairs, out of the building and onto the street corner before she encountered the officers; Lieutenant Sullivan testified that the police waited in the hallway for the defendant.[4] When the defendant approached the officers, she provided identifying information and allowed herself to be photographed in order to end the encounter.[5] The police used the photograph to identify the defendant, who was later arrested and indicted.

The Commonwealth concedes that the police had neither

---

[3]The police wanted to obtain the defendant's photograph to ascertain whether Trooper Rivera could identify the defendant as the crack cocaine supplier in the undercover purchase he had conducted a few days earlier.

[4]The judge did not make an explicit finding as to the location of the police when the defendant left the apartment. However, there is no dispute that the police officers' demands continued until the defendant left the apartment.

[5]The motion judge's subsidiary findings were that the police waited outside the apartment and on the street, told the defendant that they would not leave until she left the apartment, and threatened to break down the door in order to enter. The motion judge then reached the ultimate conclusion that the defendant's departure from the apartment building was "entirely volitional," reflected an "uncoerced" state of mind and that she "agreed" to be photographed by the police. Despite these determinations, the motion judge concluded that Ramos was seized within the meaning of art. 14 because an objectively reasonable person would not have believed she was free to leave the apartment or to remain there without first responding to the police officers' inquiry. *Commonwealth* v. *Stoute*, 422 Mass. 782, 786 (1996). Based on his determination that Ramos was seized and that the police lacked reasonable suspicion or probable cause for the seizure, the motion judge granted the mo-

reasonable suspicion nor probable cause to stop the defendant. Thus, our inquiry is confined to whether the police seized the defendant within the meaning of art. 14.[6] A person is seized by a police officer under art. 14 "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980).

Recently, in *Commonwealth* v. *Stoute*, 422 Mass. 782 (1996), we utilized the "free to leave" standard in determining whether a person was seized under art. 14. We concluded, in the context of a police pursuit, that a person being pursued is seized when the circumstances, objectively considered, indicate to that person that "he would not be free to leave the area (or to remain there) without first responding to a police officer's inquiry." *Id.* at 789. At that moment, when the person is neither free to stay nor leave without police interference, that person "is plainly the object of an official assertion of authority, which does not intend

tion to suppress the photograph.

While we disagree with the motion judge's ultimate conclusions that the defendant's departure was volitional and uncoerced and that she agreed to be photographed, we agree with his rulings of law granting the motion to suppress. See *Commonwealth* v. *Cruz*, 373 Mass. 676, 684 (1977) (disagreeing with judge's ultimate conclusion that defendant as not "in custody" until formally arrested but affirming judge's denial of motion to suppress). See also *Commonwealth* v. *Jackson*, 377 Mass. 319, 325-329 (1979) (deferring to judge's findings on subsidiary facts, but disagreeing with judge's ultimate conclusion that defendant's waiver of Miranda rights was voluntary, intelligent and knowing); *Commonwealth* v. *Murphy*, 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring) (noting that judge's ultimate findings, when of constitutional proportions, are reviewable on appeal).

[6]Article 14 of the Declaration of Rights of the Massachusetts Constitution, adopted in 1780, reads as follows:

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

to be denied, and which infringes considerably on the person's freedom of action." *Id.*

The *Stoute* case involved a police attempt to pursue, detain, and question a person riding a bicycle on a public street. *Id.* at 784. This case involves a police attempt to force a person to leave an apartment and submit to being photographed. If the defendant in *Stoute* remained where he was on the street, he would have been required to respond to police inquiry and if he attempted to leave the area, as he did, the police would chase him. If the defendant in this case remained in the apartment, the police threatened to enter by force, and if the defendant did attempt to leave, the police waited to confront her. In both situations, the police, without reasonable suspicion or probable cause to believe either person had committed a crime, used tactics that deprived the individual of freedom of movement.

We were concerned, in *Commonwealth* v. *Stoute, supra* at 788-789, that individuals be able to avoid prolonged police interaction when the police have no basis for suspecting criminal wrongdoing. We do not see a significant difference between the police chasing a person on a public street, and the police locating and trapping the defendant in an apartment. In both circumstances the police attempted to deprive the citizen of all methods of avoiding police contact. We apply the *Stoute* standard to determine whether the police seized the defendant.

The defendant, in this case, was seized within the meaning of art. 14 when the police notified her that they would not leave until she came out of the apartment and that if she continued to refuse, they would have the fire department break down the door. At that moment, the defendant was not free to leave the apartment or to remain there without responding to police inquiry. She was deprived of all available options to avoid the police. The police tactics violated the defendant's freedom of movement guaranteed by art. 14. See *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981) ("Stops provoke constitutional scrutiny because they encumber one's freedom of movement").

The Commonwealth points to facts indicating that the defendant would have been able to avoid unwanted police contact: the police did not draw their guns or attempt to use force to enter the apartment; the police engaged in a ruse to attempt to force the defendant to leave; and the defendant was behind a door, in the company of another person.

These factors do not undermine our conclusion. Contrary to

the Commonwealth's contention, the judge did not find that the police did not draw their guns; the record contains no evidence to that effect. Were we to assume that the police did not draw their guns, the result would be no different. We view "all the circumstances surrounding the incident" in determining whether a person was seized. *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 387, cert. denied, 515 U.S. 1146 (1995), quoting *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985). A police officer approaching a suspect with a drawn gun is one factor indicative of a seizure. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 779, 782-783 (1985) (holding police made illegal arrest when, without probable cause, they ordered defendants out of automobile with guns drawn). In this case, the police threatened that they would either remain in the hallway until the defendant came out or that they would enter the apartment using overwhelming force. The police coercion consisted of threats through the door. It is not relevant in these circumstances whether the officers drew their guns. Cf. *Commonwealth* v. *Stawarz*, 32 Mass. App. Ct. 211, 213-215 (1992) (police unlawfully seized individuals where, without probable cause, officers used excessive force without drawing guns).

It is not necessary to decide whether Lieutenant Sullivan's initial request that the defendant leave the apartment to confirm her safety was permissible. See *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 182-183 (1989) (police may employ ruse to gain entry into residence in certain situations). Ruses must be designed to elicit "consensual entry." *Id.* at 182. Otherwise, attempted police ruses run the risk of provoking violence, unwarranted intrusion on privacy, and damage to the residence. *Id.* at 182-183. In the present case, when the defendant refused to cooperate with Lieutenant Sullivan's request, the ruse ended. Threatening to remain on the premises until a citizen complies with a police request or to break down the door are not ruses. They are threats of intimidation or violence. In view of these threats, it is not relevant that the defendant was behind a door in the company of another person.[7]

The photograph of the defendant taken by the police was a direct result of the police officers' unlawful seizure of the defendant in the apartment and must be suppressed under the

---

[7]Because our decision is based on art. 14, we do not consider the Commonwealth's arguments premised on *Florida* v. *Bostick*, 501 U.S. 429 (1991), and *United States* v. *Jerez*, 108 F.3d 684 (7th Cir. 1997).

"fruit of the poisonous tree" doctrine set forth in *Commonwealth* v. *Reyes*, 423 Mass. 568 (1996).

The Superior Court judge's order suppressing the defendant's photograph is affirmed.

*So ordered.*