Kottmyer, Diane M., J.
The defendant, Andre Thomas (“Thomas"), is charged with possession of a firearm and possession of a Class D controlled substance. He has moved to suppress evidence seized from his person on October 6, 2006. An evidentiary hearing was held on June 7, 2007, and continued on August 10, 2007. For the reasons that follow, the defendant’s motion to suppress is allowed.
FINDINGS OF FACT
On October 6, 2006, Officer Michael Foley (“Foley”) of the Everett Police Department was on patrol in a marked cruiser. At roll call on that date, the officers were shown a picture of one Dion Smith (“Smith”), who had escaped from D.Y.S. custody in July. The officers were advised that Smith was a suspect in the shooting of Hakeem Shepard (“Shepard”) on July 27, 2006, that he had been charged with possession of a firearm and there was a warrant for his arrest. At the top of the photograph of Smith that was circulated is the notation in large bold letters, “Update-Officer Safety.” The officers were told that several people had seen Smith in the area of the high school on October 4, 2006, and that the intelligence officer believed that there might be a retaliatoiy incident in the near future in the Ferry Street and/or high school area. Smith was described as a black male in his teens/early twenties who had a tattoo on his neck.
At about 12:20 p.m. that day, while on patrol, Foley saw four males on the sidewalk in front of the A&C *669 Market on Ferry Street, and a fifth male, later identified as the defendant Thomas, riding a bicycle in circles on the street and sidewalk in the area of the store. Foley pulled over to the sidewalk, got out of his vehicle and walked around the front of the vehicle onto the sidewalk in front of the store. As Foley stopped his vehicle, the defendant began to ride the bicycle away from the area. Foley, who was about twenty-five feet away, observed that Thomas was a black male, wearing a black, military fatigue jacket with a collar, a doo rag and a hat, and that he had “some sort of tattoo on his neck.” Foley became suspicious when Thomas rode off as Foley stopped. He spoke with one of the males on the sidewalk whom he recognized as Shepard, the victim of the July shooting, and asked him who the individual on the bicycle was. Shepard answered: “That’s my boy, Andre.”[1]
Foley got back in his marked cruiser and saw Thomas cross Glendale Square, and eventually turn right onto Cobum Terrace in the direction of Glendale Park. He caught up with Thomas and stopped him on Cobum Terrace.[2] Foley got out of his cruiser and, as he approached Thomas, asked Thomas his name. Thomas said that his name was Andre and Foley asked him for identification. Thomas stated that the identification was at his mother’s house, that he was here from California. Foley believed that Thomas might have a firearm on his person and decided to pat frisk Thomas. He thought Thomas might be armed because of “where he was in the proximily of Hakeem Shepard, and he was riding a bike and he was wearing the coat, and I just thought he could be armed.” He retrieved a gun from Thomas’s left front pocket. Thomas fled on foot down Coburn Terrace into Glendale Park where he attempted to flee on a second bicycle provided by Shepard. The police eventually caught and arrested Thomas.
DISCUSSION
A person is constitutionally seized by a law enforcement officer “if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave” without submitting to police questioning. Commonwealth v. Stoute, 422 Mass. 782, 786 (1996) (citations and quotations omitted). A seizure occurs when the police have engaged in “some show of authoriiy which could be expected to command compliance, beyond simply identifying themselves as police.” Commonwealth v. Dasilva, 56 Mass.App.Ct. 220, 224 (2002) (citations and quotations omitted).
The burden of proof is on the Commonwealth to show that the seizure was constitutional. Commonwealth v. Comita, 441 Mass. 86, 91 (2004). The Commonwealth must show that at the moment of the stop the police had reason suspicion to believe that Thomas had committed, was committing, or was about to commit a crime based on specific and articulable facts and reasonable inferences from them in light of the officer’s experience and the entirety of the circumstances. Stoute, 422 Mass. at 790.
Here, the seizure occurred when Foley stopped Thomas on Coburn Terrace after pursuing him in his cruiser, told Thomas that he wanted to speak with him and got out of his marked cruiser. Commonwealth v. Mock, 54 Mass.App.Ct. 276, 277-79 (2002) (stop occurred when police officer exited cruiser and commanded the defendant to stop); Commonwealth v. Grandison, 433 Mass. 135, 138 (2001) (pursuit and stop occurred when officer commanded the defendant to stop and emerged from the marked cruiser). In these circumstances, a reasonable person would have believed that he was not free to leave without submitting to police questioning and, in fact, Thomas was not free to leave.
I find that the evidence does not establish that Foley had a reasonable suspicion that Thomas was engaged in criminal activity when he stopped him. Under the case law, Foley’s belief that Thomas was armed based on information that there would be retaliatory violence in the area between Shephard, Smith and their associates, Thomas’s proximity to Shepard when Foley approached, the fact that Thomas was an associate of Shephard and Thomas left the area of the A&C Market as Foley approached, amounts to no more than a hunch. Contrast Commonwealth v. DePeiza, 449 Mass. 367, 371-72 (2007) (reasonable suspicion found when police officers observed defendant walking at midnight in high-crime neighborhood with his right arm stiff and straight against his body suggesting he was carrying a concealed firearm, appeared nervous and ready to flee when speaking with police officers, attempted to hide his right side from the officers and appeared to hold a heavy object in his right jacket pocket).
The evidence does not establish that Foley had reasonable suspicion (an objective standard) when he stopped Thomas. In the first place, Hakeem Shepard, the alleged victim of a shooting by Smith, had told Foley that the individual on the bicycle was his “boy, Andre.” There is no suggestion in the evidence that when Foley approached the A&C Market, where Shepard and the other males were standing, there was any tension on their part or any manifestation of hostility between Thomas and Shepard. Foley testified that he saw no signs of aggression between Thomas, Shephard and the others. Second, apart from the fact that both Smith and Thomas have tattoos on their necks, albeit on different sides of their necks, there is no physical resemblance between Smith and Thomas. In particular, there are significant differences in complexion and size of Smith and Thomas as they are depicted in the photograph of Smith that was circulated at roll call[3] and Thomas’s booking photograph. Further, given Thomas’s clothing and complexion and the distance between Foley and Thomas (twenty to twenty-five feet), Foley’s ability to see Thomas’s tattoo *670 was minimal. Third, the stop was not terminated when Thomas independently confirmed what Shepard had told Foley, ie., that Thomas’s name was Andre.
I find that Foley pursued Thomas because he had information that Smith was in the area and that further violence between Shepard and Smith and their associates was likely. When he saw Thomas leave on the bicycle as he approached the A&C Market and learned from Shepard that Thomas was an associate of Shepard’s, he correctly surmised that Thomas might be armed with a weapon. “Reasonable suspicion justifying an investigatory stop cannot be founded on police belief (whatever its source) that a person is carrying a concealed firearm in the absence — -as was the case here — of any evidence of suspicious conduct by that person indicative of criminal activity or of an imminent threat to police or public safely.” DaSilva, 56 Mass.App.Ct. at 227-28 (footnote omitted).[4]
ORDER
For the reasons stated herein it is hereby ORDERED that the defendant’s motion to suppress is ALLOWED.

Shepard may have said, ‘That’s my brother, Andre,” but I credit Foley’s testimony that he understood Shepard to say “That’s my boy, Andre.”

I find that Foley directed Thomas to stop and a seizure took place at that moment. Foley’s testimony that he believed that Thomas might be Smith, an escapee from DYS custody and the subject of an active warrant who had been charged with possession of a weapon in connection with the shooting of Shepard, and that after pursuing and catching him (but apparently not calling for back-up), he simply asked the suspect to speak with him was not credible.

The photograph of Smith that is in evidence is a color photograph and Foley testified he reviewed a black and white photograph. Nonetheless, there is no physical resemblance between the two men.

Thomas’s jacket, which is thigh-length, and tire gun are in evidence. Although the cell phone is not in evidence, given the bulk of the jacket, the size of the pockets and the size of a typical cell phone and of the gun in this case, I do not find that either or both of Thomas’s pockets were “bulging” when Foley stopped him.