The defendant, Michael Monteiro, appeals from his convictions on indictments for trafficking in heroin, G. L. c. 94C, § 32E(c ), and trafficking in heroin near a park, G. L. c. 94C, § 32J. He argues that the motion judge erred in denying his motion to suppress evidence seized by police, and that the trial judge erred in denying his motions for a required finding of not guilty. We affirm.
1. Motion to suppress. The defendant maintains that the police detectives conducted an unlawful stop without any legitimate basis to believe that he was engaged in criminal activity. The Commonwealth argues in response that the stop was supported by reasonable suspicion, based on the detectives' observations, training, and experience, that the defendant was carrying a concealed firearm.
Four Brockton police detectives testified at the suppression hearing, from which the motion judge found the following facts. The detectives initially observed the defendant from their unmarked cruiser while conducting surveillance on a building late at night. They saw the defendant -- known to one of them from a prior narcotics arrest -- walking unnaturally down the street with his left arm tucked firmly to his side at the top of his pants. His left elbow was pinned to his side and his left hand positioned at his groin area. The detectives believed the defendant was using his left arm to conceal a firearm. One of the detectives, from the rear window, then saw the defendant hold his left arm against his body, pause, and then use both hands to readjust an apparent object stashed in his waistband. He then resumed walking, but switching arms, now holding his right arm against his body with his left arm swinging freely. Believing that the defendant was concealing a firearm, the detectives decided to question him.
After following the defendant in their vehicle for a short distance, Detective Hilliard got out of the cruiser, which did not block the defendant's path toward the park (which was closed), approached the defendant as he was about to walk into the park, and said, "Hey fella, let me talk to you." Hilliard wore a tee-shirt with a Brockton police badge insignia on the front, and a holstered service weapon. Looking "panicked," the defendant immediately reached with both arms for his waistband and walked away. The defendant's unexpected reaching hand movements caught Hilliard off-guard, leading him to think the defendant was reaching for a concealed firearm. Stepping backwards, and bringing his hand to his sidearm, Hilliard announced, "Brockton police."[2] The defendant fled toward the park. Hilliard followed and saw the defendant, then bent over at the waist and manipulating his waistband, throw something with his left arm. Hilliard heard a metallic "clang" and thought the thrown object struck a nearby chain link fence with a metal sign affixed to it. Hilliard and another detective caught up to the defendant and arrested him on a basketball court in the park. Shortly thereafter, the detectives returned to the area and discovered, in the back yard of a residence bordering the park, three duct-taped packages of heroin approximately ten to fifteen feet from the roadway where the defendant ran.
A person is constitutionally seized by a police officer "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" without submitting to police questioning. Commonwealth v. Stoute, 422 Mass. 782, 786 (1996), quoting from Commonwealth v. Borges, 395 Mass. 788, 791 (1985). Police conduct that may cause a reasonable person to believe that he or she is not free to leave usually consists of the application of some type of physical force or a show of authority that exceeds a request for identification or information. See Commonwealth v. Leonard, 422 Mass. 504, 508 (1996) ; Commonwealth v. Barros, 435 Mass. 171, 173-174 (2001) ; Commonwealth v. Martin, 467 Mass. 291, 302-303 (2014). "[T]he police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." Commonwealth v. Fraser, 410 Mass. 541, 544 (1991). See Commonwealth v. Thomas, 429 Mass. 403, 406 (1999).
In this case, the detectives did not seize the defendant by following him and asking to speak with him. The police are entitled to follow an individual for the purpose of surveillance and may ask the individual to speak with them. See Commonwealth v. Williams, 422 Mass. 111, 116-117 (1996) ; Commonwealth v. Watson, 430 Mass. 725, 731 (2000).[3] In addition, the act of exiting a police cruiser for the purpose of questioning an individual, without some additional show of authority, does not constitute a seizure. See Commonwealth v. Nestor N., 67 Mass. App. Ct. 225, 228 (2006) (approaching group of youths suspected of drug dealing, officer said, "[H]ang on a second, can I talk to you?"). See also Commonwealth v. Fletcher, 52 Mass. App. Ct. 166, 170 (2001) (officer stopping police cruiser, stepping out, and approaching suspects to ask about firearm did not constitute seizure); Commonwealth v. Pagan, 63 Mass. App. Ct. 780, 782 (2005) ("[T]he officers did not impinge on the defendant's rights by simply alighting from the police cruiser and approaching him"). It was only when Hilliard, in response to the defendant's unexpected reaching motion, took a step back, placed his hand to his firearm, and announced, "Brockton police," that the defendant was seized.[4]
However, while the detectives could reasonably believe that the defendant possessed a firearm,[5] such a belief alone is not sufficient to justify stopping an individual for a threshold inquiry. "Reasonable suspicion justifying an investigatory stop cannot be founded on police belief (whatever its source) that a person is carrying a concealed firearm in the absence ... of any evidence of suspicious conduct by that person indicative of criminal activity or of an imminent threat to police or public safety." Commonwealth v. DaSilva, 56 Mass. App. Ct. 220, 227-228 (2002). See Commonwealth v. Alvarado, 423 Mass. 266, 269 (1996) ("Carrying a gun is not a crime. Carrying a firearm without a license [or other authorization] is").
Here, the defendant's conduct provided the detectives with reasonable suspicion to believe that he was either engaged in criminal activity, posed a threat, or both. The facts supporting this conclusion include the defendant's suspicious hand placement (at his waist area, indicating that he was securing a loose, concealed object) and unnatural walking motion, his presence in a high crime area at 11:45 P.M. , his attempts to avoid the police by walking down a dead-end street and into a closed park, and his reaction to Hilliard's request to speak with him. See Commonwealth v. Grandison, 433 Mass. 135, 139-140 (2001) (avoiding police may be considered together with other factors to support reasonable suspicion); Commonwealth v. DePeiza, 449 Mass. 367, 374 (2007) ("[N]ot only was the defendant carrying a concealed firearm in his pocket, but he was also concealing his pocket from the police. It is the concealment of his pocket that supplies the reasonable suspicion that the firearm was illegal"); Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 555-556 (2002) (evasive behavior during police encounter may be factor in reasonable suspicion determination). Therefore, we conclude that the police had reasonable suspicion to stop the defendant and conduct a threshold inquiry into his potentially illegal possession of what they believed to be a firearm.
2. Required finding of not guilty. The defendant also contends that the trial judge erred in denying his motions for a required finding of not guilty, arguing that it was not possible for the jury to convict him of the charged offenses based on the evidence presented. Specifically, the defendant's argument at trial was that it was impossible for the packages of heroin to hit the sign and land in the location where the police found them and, therefore, the defendant could not have been the one who put the heroin there. To support this contention, the defendant enlisted an expert who testified that the defendant would have had to throw the packages of heroin in excess of 450 miles per hour in order to hit the sign and land where they did.
However, this argument is not persuasive because, at its core, it is a credibility argument. Thus, even if the jury credited the expert's testimony, they did not have to conclude that the packages hit the sign or the fence when the defendant threw them; they could have found that the defendant threw the packages behind him as he ran,[6] or that they did not hit the sign squarely. "Because the credibility of the defendant's witness[ ] and the weight of [his] testimony are issues for the jury to decide, the Commonwealth's case could not have deteriorated where the defendant's evidence at trial turned solely on the credibility of his witness[ ]." Commonwealth v. Platt, 440 Mass. 396, 404 (2003).
In addition, the Commonwealth presented evidence from which the jury could infer that the defendant threw the packages. When the detectives located the packages, the ground around the packages was wet, but the packages themselves were dry, leading to the inference that they had not been there for long. Furthermore, there was only testimony that the detectives heard a noise while chasing the defendant -- not a "metallic clang" as testified at the suppression hearing -- and no witness testified to seeing the packages hit anything. Thus, there was conflicting evidence on the trajectory of the packages and whether they hit anything after the defendant threw them. When confronted with conflicting evidence, it is for the jury to determine where the truth lies. See ibid. See also Commonwealth v. Pike, 430 Mass. 317, 323-324 (1999). Therefore, the trial judge did not abuse his discretion in denying the defendant's motions.
Judgments affirmed.

The motion judge concluded, "[T]here was no mistaking the meaning of [Hilliard's] command."

See Stoute, supra at 789 (request to "hold up a minute" does not constitute seizure); Commonwealth v. Rock, 429 Mass. 609, 611-612 (1999) (following suspects in unmarked cruiser without activating lights and asking, "Guys, can I talk to you for a second?" does not constitute seizure); Martin, supra at 303 (calling out to person to "[h]old on a second, I want to talk to you," does not constitute seizure).

At this point, Hilliard reasonably believed, based upon the totality of the circumstances, that the defendant possessed a concealed firearm and that he posed a danger. See Commonwealth v. Sanchez, 403 Mass. 640, 643 (1988).

The motion judge concluded, and we agree, that it was reasonable for the detectives to believe that the defendant concealed a bulky object within his clothing.

The defense expert, on cross-examination, testified that a person running in that location could throw an item behind him as he ran by the tree and have it land where the heroin was found.