COMMONWEALTH *vs.* DWAIN SYKES.

Suffolk. April 3, 2007. - June 8, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Firearms. Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to suppress. *Search and Seizure,* Threshold police inquiry. *Threshold Police Inquiry. Words,* "Seizure," "Pursuit."

A Boston Municipal Court judge erred in granting the criminal defendant's motion to suppress evidence of a loaded revolver that the defendant had discarded during a pursuit by police but that the police had recovered after they arrested him, where all of the defendant's actions (pedaling away from the officers on a bicycle when encountered in a high-crime area, looking back at the officers several times, abandoning his bicycle in an effort to dodge further contact with the officers, and clenching his waistband while running down the street), taken together, gave rise to the requisite reasonable suspicion of criminal activity justifying a threshold inquiry. [310-315]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on August 24, 2005.

A pretrial motion to suppress evidence was heard by *Kenneth V. Desmond, Jr.,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Kathleen Celio,* Assistant District Attorney (*Donald LaRoche,* Assistant District Attorney, with her) for the Commonwealth.

*Anne O'Reilly* for the defendant.

SPINA, J. The defendant in this case was charged with carrying a firearm without a license, possession of a firearm without a firearm identification card, commission of a felony while possessing a firearm with a defaced serial or identification number, assault and battery on a police officer (two counts), and resisting arrest. A judge in the Dorchester Division of the Boston Municipal Court allowed the defendant's motion to suppress evidence re-

covered after the police arrested him. A single justice of this court granted the Commonwealth leave to pursue an interlocutory appeal in this court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). The Commonwealth now contends that the motion judge improperly suppressed the defendant's loaded revolver because the police did not seize the defendant until after he had already discarded the weapon into the street. For the reasons that follow, we reverse the allowance of the motion to suppress.

The judge's unchallenged findings are as follows. At about 6 P.M. on August 23, 2005, Officers Chin, Griffin, Charbonnier, and O'Brien of the area C-11 drug control unit responded to a 911 telephone call. The caller alleged drug activity among ten to twenty black and Hispanic males, wearing white shirts and jeans, who had congregated on Bird Street in the Dorchester section of Boston, a known high-crime area. The caller did not identify particular individuals by name or by physical characteristics. The police officers were in an unmarked Ford Crown Victoria automobile and were dressed in plain clothes. Their shirts were emblazoned with the words, "Boston Police Department Anti-Crime Unit," and all four officers were displaying their badges outside of their clothes.

While en route to Bird Street, the officers received a radio message from Boston Detective Gallarelli, who stated that he had just been in the vicinity of Bird Street and had seen the reported ten to twenty black and Hispanic males in white T-shirts, and that they were engaged in pitching pennies. Detective Gallarelli did not tell the officers that he had witnessed any illegal drug activity.

When the four police officers reached their destination, they observed a group of black males huddled on the odd-numbered side of Bird Street. The officers saw the defendant look at them. The defendant, who was on a bicycle, then began to move away from the group of black males. He turned and looked back in the direction of the officers several times as he rode away. The officers pulled their vehicle alongside the defendant and asked if he would speak with them. In response, the defendant sped up. The officers correspondingly did the same.

The defendant rounded Bird Street onto Hancock Street, hit a

tree, and abandoned the bicycle. He proceeded on foot back up Bird Street, clenching his waistband. The officers left their vehicle and chased the defendant. When he reached the vicinity of 16 Bird Street, the defendant discarded an object onto the ground as he crossed the street toward Columbia Road. Detective Gallarelli, who was undercover, waited for the defendant at the corner of Bird Street and Columbia Road. When he stepped in front of the defendant, the defendant tried to push him out of the way. The police officers then tackled the defendant to the ground, and a violent struggle ensued. Instead of placing his hands behind his back, the defendant bit Officer Charbonnier's fingers, causing a laceration on the officer's thumb, as well as abrasions to his right elbow and right knee. Officer O'Brien sustained an injury to his left wrist. The officers placed the defendant under arrest. They recovered a loaded black .38 caliber revolver with a brown handle at 16 Bird Street, where the defendant had discarded it.

The judge concluded that the encounter between the defendant and the police officers became a seizure when, after asking the defendant if they could speak with him, the defendant sped up on his bicycle and the officers proceeded to follow him in their vehicle. At that point, the judge opined, the officers were acting in such a manner as to force the defendant to submit to police authority, because a reasonable person would have believed that he was not free to leave without answering the officers' questions. The judge stated that at the time of seizure, the officers did not have reasonable suspicion to believe that the defendant was engaged in any criminal activity. Therefore, the judge allowed the defendant's motion to suppress.

In reviewing the disposition of a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997). See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). We make an independent determination whether the judge correctly applied constitutional principles to the facts as found. See *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990).

Determining the precise moment at which a seizure occurs is critical to resolving the issue of suppression. See *Commonwealth* v. *Barros*, 435 Mass. 171, 173 (2001). A person has been "seized" by a police officer, "if, in view of all of the circum-

stances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980). "[N]ot every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Stoute,* 422 Mass. 782, 789 (1996). "[T]he police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." *Commonwealth* v. *Fraser,* 410 Mass. 541, 544 (1991). See *Commonwealth* v. *Barros, supra* at 174 (initial request by police officer that defendant stop for questioning not seizure where officer remained in cruiser and did not restrict defendant's freedom of movement); *Commonwealth* v. *Murdough,* 428 Mass. 760, 763 (1999) ("officers may make inquiry of anyone they wish . . . so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries"). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry* v. *Ohio,* 392 U.S. 1, 19 n.16 (1968). The nature of an encounter between a citizen and a law enforcement official is necessarily fact specific and requires careful examination of the attending circumstances. See *Commonwealth* v. *Thinh Van Cao,* 419 Mass. 383, 387, cert. denied, 515 U.S. 1146 (1995).

Not surprisingly, the Commonwealth and the defendant differ in their opinions as to when the defendant was seized by law enforcement officials. The defendant contends, and the judge found, that seizure occurred when, after being asked by the officers if he would speak with them, the defendant sped up on his bicycle and the officers correspondingly did the same, following him in their vehicle. In the defendant's view, the officers' actions constituted a "chase," the object of which was to capture and interrogate him. The defendant argues that the officers' pursuit indicated that he was not free to leave without responding to their inquiries, and that he had become the subject of undeniable police authority. It was, the defendant continues, the functional equivalent of a seizure.

The Commonwealth, on the other hand, interprets this factual scenario differently. It contends that seizure occurred when Detective Gallarelli stepped in front of the defendant at the corner of Bird Street and Columbia Road, after the defendant had already abandoned his bicycle, discarded his weapon, and was fleeing from the area on foot. It was at this juncture, according to the Commonwealth, that the defendant's freedom to leave was hindered, and the seizure was appropriate because Detective Gallarelli had reasonable suspicion to believe that the defendant illegally possessed a firearm.

Whether a police "pursuit" will be considered a seizure depends on the particular nature of the law enforcement action. "[P]ursuit begins only when action by the police would 'communicate[] to the reasonable person an attempt to capture or otherwise intrude on [an individual's] freedom of movement.' " *Commonwealth* v. *Watson*, 430 Mass. 725, 731 (2000), quoting *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996). "It occurs when police attempt to stop an individual 'to effectuate a threshold inquiry.' " *Commonwealth* v. *Watson, supra,* quoting *Commonwealth* v. *Williams, supra* at 117. See *Commonwealth* v. *Barros, supra* at 174-176 (police action in following defendant in cruiser, leaving vehicle, approaching defendant, demanding to speak with him, and telling him, "Come here," had compulsory dimension that transformed encounter into seizure); *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998) (activation of police car's blue lights constituted seizure, requiring reasonable suspicion of criminal activity); *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981) (pursuit designed to effect stop encumbers freedom of movement, necessitating constitutional scrutiny); *Commonwealth* v. *Dasilva*, 56 Mass. App. Ct. 220, 224-225 (2002) (police conduct in following lone bicyclist and twice ordering him to stop with unmistakable intent of requiring him to submit to police inquiries amounted to seizure). See also *Commonwealth* v. *Stoute, supra* at 782-784, 788-790 (under art. 14 of Massachusetts Declaration of Rights, seizure occurs not only when police officer physically detains individual, but also when officer engages in pursuit with obvious intent of detaining individual for inquiry).

"[A] claim of police 'pursuit' by [a] defendant, however, is

not a talismanic formula for converting all police investigation into a stop and seizure." *Commonwealth* v. *Laureano*, 411 Mass. 708, 709-710 (1992) (no seizure where detective followed defendant into public restroom, where both had right to be). "Following or observing someone without more, such as using a siren or lights, attempting to block or control an individual's path, direction, or speed, or commanding the individual to halt, is not pursuit." *Commonwealth* v. *Watson*, *supra*. "No degree of suspicion, reasonable or otherwise, [is] constitutionally required for the police to commence surveillance." *Commonwealth* v. *Williams*, *supra* at 116. See *Michigan* v. *Chesternut*, 486 U.S. 567, 576 (1988) (police not required to have particularized and objective basis for suspecting criminal activity to follow in cruiser); *Commonwealth* v. *Grandison*, 433 Mass. 135, 138 (2001) (following individual for surveillance purposes without use of blue lights, flashers, or sirens is not pursuit); *Commonwealth* v. *Moore*, 32 Mass. App. Ct. 924, 924 (1992) (surveillance does not implicate constitutional protections). See also *Commonwealth* v. *Rock*, 429 Mass. 609, 611-612 (1999) (no seizure where police followed defendant in unmarked cruiser, did not activate sirens or blue lights, stopped, left cruiser, and asked if they could speak with defendant briefly).

The defendant here correctly acknowledges that there was no "pursuit" and, therefore, no seizure when the police officers initially pulled their vehicle alongside the defendant's bicycle on Bird Street and asked if he would speak with them. The officers did not restrict the defendant's movements, and plainly the defendant felt free to leave, because his response to the officers' inquiry was to pedal away quickly. See *Commonwealth* v. *Barros*, *supra*. Once that occurred, the officers merely followed the defendant in their cruiser, keeping him under surveillance. They did not turn on their blue lights, flashers, or sirens. There was no evidence that the officers blocked or impeded the defendant's path, direction, or speed. They did not demand that he stop and answer any questions. Such action (or inaction) by the police simply did not constitute a pursuit, and, therefore, was not a seizure of the defendant. It was the subsequent actions of the officers that constituted "an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Stoute*, *supra* at 789.

Seizure of the defendant for constitutional purposes occurred when the officers left their cruiser and began to chase the defendant immediately after he collided with a tree, abandoned his bicycle, and ran away from them, grabbing at his waistband. At this point, objectively, the police intended to stop the defendant to effectuate a threshold inquiry. See *id.* at 783, 788-790; *Commonwealth* v. *Williams, supra* at 117; *Commonwealth* v. *Wilson,* 52 Mass. App. Ct. 411, 413-415 (2001). Such action by a law enforcement official is justified "where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). See *Commonwealth* v. *Grandison, supra* at 139, and cases cited. "Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience." *Id.* See *Commonwealth* v. *Watson, supra* at 729. "The test is an objective one." *Commonwealth* v. *Grandison, supra,* quoting *Commonwealth* v. *Helme,* 399 Mass. 298, 301 (1987). See *Commonwealth* v. *Eckert,* 431 Mass. 591, 599 (2000).

Neither mere presence in a high-crime area nor flight from police officers is sufficient to justify a stop. See *Commonwealth* v. *Grandison, supra.* "However, '[s]eemingly innocent activities *taken together* can give rise to reasonable suspicion justifying a threshold inquiry' " (emphasis added). *Id.,* quoting *Commonwealth* v. *Watson, supra.* See *Commonwealth* v. *Wilson, supra* at 414-415, and cases cited (flight may be considered as one factor, among others, in determining whether reasonable suspicion existed when police began to chase defendant); *Commonwealth* v. *Sweezey,* 50 Mass. App. Ct. 48, 52-53 n.10 (2000) ("once the circumstances establish suspicion sufficient to justify a stop, the subsequent flight of a defendant may contribute to the objective indicia of criminality"). "The facts and inferences underlying the officer's suspicion must be viewed as a whole when assessing the reasonableness of his acts." *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981) (suspicion must be reasonable before pursuit begins).

We acknowledge that this is a close case. Nonetheless, after careful consideration, we conclude that the police officers pos-

sessed the requisite reasonable suspicion to stop the defendant to effectuate a threshold inquiry. When the officers arrived on Bird Street, a known high-crime area, where a large group of men had congregated, the defendant turned his bicycle around and started pedaling away from the officers, looking back at them several times. The defendant shortly thereafter collided with a tree, jumped off the bicycle, abandoned it, and clenched his waistband while he ran down the street. The fact that the defendant chose to abandon his bicycle in an effort to dodge further contact with the police was significant. See *Commonwealth* v. *Grandison, supra* at 139-140 (attempt to avoid contact with police may be considered along with other factors in establishing reasonable suspicion); *Commonwealth* v. *Doocey,* 56 Mass. App. Ct. 550, 555-556 (2002) (evasive behavior by suspect during police encounter constitutes factor in objective officer's reasonable suspicion of criminal activity); *Commonwealth* v. *Wilson, supra* at 414 (actions of defendant in suddenly bolting from car, holding chest as if concealing something, and looking around furtively are relevant factors in establishing reasonable suspicion). See also *Commonwealth* v. *Williams, supra* at 116-117. Cf. *Commonwealth* v. *Deramo,* 436 Mass. 40, 44 (2002) ("The standard of 'reasonable suspicion' does not require that an officer exclude all possible innocent explanations of the facts and circumstances"); *Commonwealth* v. *Fisher,* 54 Mass. App. Ct. 41, 46-47 (2002) ("the defendant's motion to his waist, notwithstanding its inherent ambiguity, tipped the scales in favor of reasonable belief when aggregated with the other nondispositive but relevant factors"). We conclude that all of the defendant's actions, taken together, were sufficient to give rise to reasonable suspicion of criminal activity by the defendant justifying a threshold inquiry by the officers. Accordingly, the evidence obtained by the police as a result of the defendant's seizure need not be suppressed.

The order allowing the motion to suppress is reversed, and an order denying the motion is to enter. This case is remanded to the Boston Municipal Court for further proceedings.

*So ordered.*