COMMONWEALTH vs. MESSIAH FRANKLIN.

Suffolk. March 4, 2010. - May 17, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search
and seizure, Reasonable suspicion. *Search and Seizure,* Pursuit, Threshold
police inquiry, Reasonable suspicion. *Words,* "Seized."

A Boston Municipal Court judge erred in allowing a criminal defendant's
pretrial motion to suppress a firearm discovered on the ground on the other
side of a fence that the defendant had been attempting to climb when he was
stopped by police, where the defendant was seized in the constitutional sense
when, after he ran away from an unmarked police car and was pursued by
two police officers who saw him holding his hand to his waist and then
throw an item over the fence that made a metallic sound when it hit the
cement or asphalt, they grabbed the defendant as he was climbing the fence,
at which point the police had reasonable suspicion, if not probable cause, to
believe the defendant was illegally carrying a firearm. [820-823] MARSHALL,
C.J., concurring, with whom IRELAND, J., and BOTSFORD, J., joined.

COMPLAINT received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on November 20,
2006.

A pretrial motion to suppress evidence was heard by *Ray-
mond G. Dougan, Jr.,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Cordy,* J., in the Supreme Judicial Court for the
county of Suffolk, and the appeal was reported by him to the
Appeals Court. After review by the Appeals Court, the Supreme
Judicial Court granted leave to obtain further appellate review.

*Joseph A. Feeney* for the defendant.

*John P. Zanini,* Assistant District Attorney (*Kathleen Celio &
Christine Walsh,* Assistant District Attorneys, with him) for the
Commonwealth.

COWIN, J. The defendant was charged with possession of a

firearm without a firearm identification card (two counts)[1] and carrying a firearm with ammunition. A judge of the Boston Municipal Court allowed the defendant's motion to suppress the firearm on the ground that it was obtained as the result of an unlawful seizure. A single justice of this court granted the Commonwealth's application for leave to prosecute an interlocutory appeal, see Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and transferred the matter to the Appeals Court, see G. L. c. 211, § 4A. The Appeals Court, in an unpublished memorandum and order issued pursuant to its rule 1:28, reversed the order of suppression. We granted the defendant's application for further appellate review and now likewise reverse the allowance of the motion to suppress.

The judge's sparse findings are as follows. At approximately 6:40 P.M. on November 18, 2006, four police officers of the youth violence strike force were patrolling the Harmon Street area in the Mattapan section of Boston, which had been identified by police as a high crime area. The officers were in an unmarked Ford Crown Victoria automobile usually recognized in this area as an "unmarked police car." The officers observed two young black males talking in front of 43 Harmon Street. None of the officers knew either of the men. As the police car approached the two men, one of them, the defendant, looked at the car, stopped talking, and began "looking around." The police car stopped; immediately after that, the defendant "took off running" down Harmon Street away from the police car.[2] One of the officers said, "He's running," and three of the officers got out of the car, with two of them running after the defendant. As they ran, the two officers saw the defendant holding his hand to his waist. Based on their experience and training, they both concluded that he had contraband, probably a weapon, in his waistband.

The defendant ran toward a six foot tall stockade fence. Both officers saw him throw an item over the fence and they both heard a metallic sound when the item hit something "hard like

---

[1] One of these counts was amended by agreement to carrying a firearm without a license.

[2] The judge did not credit the "police witness testimony" that the defendant looked surprised or nervous at the approach of the police car.

cement or asphalt on the other side of the fence." The defendant was stopped by the officers as he attempted to climb over the fence. He was brought to the ground and handcuffed. One of the officers looked over the fence and saw a handgun on the asphalt. The weapon in question was seized from that location.

The judge concluded that the defendant, who had begun running when the police car stopped, was seized by the police when the officers got out of their vehicle and chased him. The judge stated that at that point there was "no justification" for the stop, and accordingly, he allowed the defendant's motion to suppress.

In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error. The weight and credibility to be given oral testimony is for the judge. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. However, we review independently the motion judge's application of constitutional principles to the facts found. *Commonwealth* v. *Contos*, 435 Mass. 19, 32 (2001).

Evidence obtained as the result of an unlawful seizure is inadmissible. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 788-789 (1996). A challenge to evidence on this basis requires a two-fold determination: whether a seizure has taken place at all and, if so, the precise point in time at which the seizure occurred. A person is "seized" by a police officer "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Barros*, 435 Mass. 171, 173-174 (2001), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). Thus, "not every encounter between a law enforcement official and a member of the public constitutes [a seizure]." *Commonwealth* v. *Lopez*, 451 Mass. 608, 611 (2008), quoting *Commonwealth* v. *Stoute, supra* at 789. There is no seizure where police merely ask questions unless a reasonable person, given the circumstances of the encounter, would believe he was not free to walk away. See *Commonwealth* v. *Lyles*, 453 Mass. 811, 815 (2009), and cases cited. See also *Commonwealth* v. *Murdough*, 428 Mass. 760, 763 (1999) ("officers may make inquiry of anyone they wish . . . so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries"). "Only when the

officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 (1968). We apply these principles to the circumstances of the present case.

The defendant maintains that, as the judge ruled, a seizure occurred when the police officers left their vehicle and began running after him. According to the defendant, the police were chasing him in an attempt to catch him, and the fact that a pursuit took place was sufficient to indicate that he was not free to leave at that point. The Commonwealth maintains on appeal that the defendant was not seized when the police left their vehicle and began to pursue him; in its view, a seizure occurred only when the police grabbed the defendant on the fence after he had discarded the weapon. At that time, a seizure was justi-fied, according to the Commonwealth, because reasonable suspicion existed to believe that the defendant illegally pos-sessed a firearm.

In *Commonwealth* v. *Stoute*, *supra* at 789, citing 4 W.R. LaFave, Search and Seizure § 9.3(d), at 127-128 (3d ed. 1996), we said that "a pursuit, which, objectively considered, indicates to a person that he would not be free to leave the area . . . without first responding to a police officer's inquiry, is the functional equivalent of a seizure, in the sense that the person being pursued is plainly the object of an official assertion of authority, which does not intend to be denied, and which infringes considerably on the person's freedom of action." In that case, we rejected, for purposes of art. 14 of the Massachusetts Declara-tion of Rights, the analysis of the United States Supreme Court, pertaining to the Fourth Amendment to the United States Constitution, that appeared in *California* v. *Hodari D.*, 499 U.S. 621, 624 (1991). See *Commonwealth* v. *Stoute*, *supra* at 786-789. In *California* v. *Hodari D.*, *supra*, the Court concluded that a person who does not acquiesce to a lawful show of authority, and flees, is "seized" for purposes of the Fourth Amendment only when the police actually lay hands on and detain him. We adhere to our conclusion in *Commonwealth* v. *Stoute*, *supra* at 789, that a seizure for art. 14 purposes may be effectuated by police conduct that falls short of the physical detention of the suspect. See *id.* at 790 (seizure likely occurred when police left

cruiser and chased defendant who twice had refused requests that he stop and speak to them). In our cases, we have clarified the circumstances in which police pursuit of an individual sufficiently indicates that the person pursued is not free to leave, so that a seizure in the constitutional sense has occurred.

Specifically, we have held that the police may follow in a cruiser someone whom they observe engage in suspicious conduct to further their investigation, see *Commonwealth* v. *Grandison*, 433 Mass. 135, 138 (2001), and cases cited (following person in cruiser for surveillance purposes without use of blue lights, flashers, or sirens is not seizure), and that following a person, presumably at a rate of speed sufficient to keep him in sight, does not amount to a seizure absent some additional assertion of authority, by direct verbal communication ("stop") or otherwise (blocking, use of flashers). See *Commonwealth* v. *Battle*, 365 Mass. 472, 475 (1974) (when two persons ran into building in "apparent response" to approaching police car, police "had the right — if not the duty — to conduct further visual investigation while the two persons remained in public view"). See also *Commonwealth* v. *Lopez, supra* at 612 n.2 (2008) (no seizure where police followed defendant but did not issue any orders, block him from leaving, activate cruiser's blue lights, or pursue him after he rebuffed request to talk). Compare *Commonwealth* v. *Depina, ante* 238, 242 (2010) (three officers wearing "Gang Unit" shirts, emerging from single vehicle, "clos[ing] in" on suspect even after he reversed direction to avoid them, and asking suspect to "come over here" constituted seizure); *Commonwealth* v. *Barros, supra* at 174-176 (action of police in following defendant in cruiser, leaving vehicle, approaching defendant, demanding to speak with him, and telling him, "Come here," sufficiently compulsory to constitute seizure); and *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998) (activating cruiser's blue lights constituted seizure), with *Commonwealth* v. *Rock*, 429 Mass. 609, 611-612 (1999) (following defendant in unmarked cruiser without activating sirens or blue lights, stopping and leaving cruiser, and asking to speak with defendant briefly not seizure). See, to the same effect, *Commonwealth* v. *Watson*, 430 Mass. 725, 731 (2000).

The line we have attempted to draw is fact specific. Here, the

defendant's flight was not prompted by anything the police did and, indeed, began before the officers got out of their vehicle. There was no evidence that the police exercised any show of authority or commanded the defendant to stop. See *Commonwealth* v. *Grandison, supra* at 138. Nor did they block or impede his path. See *Commonwealth* v. *Sykes,* 449 Mass. 308, 313 (2007). Accordingly, the judge's conclusion that the defendant was seized when the police left their vehicle and began to run after him was incorrect. See *Commonwealth* v. *Battle, supra* at 474-475 (no seizure where police stopped cruiser, got out, and pursued defendants into outer hallway of building).

Thereafter, a seizure did take place when the police grabbed the defendant as he was climbing the fence. By that time, "suspicious conduct [gave] the officer[s] reason to suspect that [he had] committed, [was] committing, or [was] about to commit a crime." *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). "Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience." *Commonwealth* v. *Grandison, supra* at 139, citing *Commonwealth* v. *Watson, supra* at 729. Here, according to the judge's findings, the officers both concluded, based on their experience and training, that when the defendant ran holding his hand to his waist he had "contraband, probably a weapon, tucked into his waistband." They then saw him throw something over a fence and heard a metallic sound when the item hit something "hard like cement or asphalt." Clearly, at that point the police had reasonable suspicion, if not probable cause, that the crime of illegally carrying a firearm had been committed.[3]

Accordingly, the order allowing the motion to suppress is reversed.

*So ordered.*

MARSHALL, C.J. (concurring, with whom Ireland and Botsford,

---

[3]Although we have said that the mere fact of carrying a weapon does not give rise to reasonable suspicion that the person is carrying it unlawfully (because many people register their weapons and carry them lawfully), see *Commonwealth* v. *Couture,* 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), the fact of concealment of the weapon and the throwing of it over a fence gives rise to such reasonable suspicion. See *Commonwealth* v. *DePeiza,* 449 Mass. 367, 373-374 (2007).

JJ., join). On the "sparse" facts found by the judge, which the court recounts, *ante* at 819-820, I agree that the defendant was not seized until the police "grabbed the defendant as he was climbing the fence." *Ante* at 823. I do so because at the close of his findings, the judge stated these were the "sole facts" he credited concerning the defendant after a two-day hearing on the defendant's motion to suppress. We are thus constrained from looking to uncontested testimony elsewhere in the record to determine how close the officers were to the defendant when they began to chase him, how fast they ran, and whether other circumstances were present that may have caused the officers' actions to communicate to a reasonable person in the defendant's shoes that he was not free to leave. *Commonwealth* v. *Barros*, 435 Mass. 171, 173-174 (2001), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). See *ante* at 820-821.

As the court recognizes, a foot chase may constitute a seizure under art. 14 of the Massachusetts Declaration of Rights. *Ante* at 821-822. Being chased by police officers at close quarters at a fast running pace and for some distance, a reasonable person would conclude "that 'the object of chase is capture,' that is, that the police purpose is 'to restrain his liberty, not merely to be afforded the opportunity to talk to him,' that consequently 'if he stopped running, he would not be free to leave,' and that 'in effecting his capture, the police will resort to physical force if necessary' " (footnotes omitted). 4 W.R. LaFave, Search and Seizure § 9.4(d), at 459 (4th ed. 2004), and cases cited. Courts in other jurisdictions have so held.[1] Although, as the author of one treatise phrased it, the United States Supreme Court, in

---

[1]See, e.g., *People* v. *Shabaz*, 424 Mich. 42, 46-47, 66 (1985); *Commonwealth* v. *Matos*, 543 Pa. 449, 451-452, 458-459, 462 (1996); *Commonwealth* v. *Jeffries*, 454 Pa. 320, 322, 325-326 (1973). See also *People* v. *Thomas*, 660 P.2d 1272, 1273-1274, 1276 (Colo. 1983), overruled by *People* v. *Archuleta*, 980 P.2d 509, 514 (Colo. 1999). In *People* v. *Thomas*, *supra* at 1274, 1276, the Supreme Court of Colorado concluded that police officers who left their vehicle and "chased the defendant on foot" had seized the defendant "when they commenced their chase." In *People* v. *Archuleta*, *supra*, the court overruled *People* v. *Thomas*, *supra*, "to the extent that it is inconsistent with [*California* v. *Hodari D.*, 499 U.S. 621 (1991)]."

In *People* v. *Mamon*, 435 Mich. 1, 4-5, 15 (1990), the Supreme Court of Michigan reversed a lower court's order suppressing cocaine found in a bag

*California* v. *Hodari D.*, 499 U.S. 621, 626-627 (1991), rejected the concept that a chase by police officers constitutes "a very substantial intrusion upon Fourth Amendment values," 4 W.R. LaFave, *supra*, the court recognizes, *ante* at 821, that in construing art. 14, we declined to follow the *Hodari D.* decision. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 787-789 (1996).

At the motion hearing in this case, the prosecutor agreed with the judge that the seizure had occurred when the officers "got out of the car and started chasing" the defendant, referring the judge to *Commonwealth* v. *Sykes*, 449 Mass. 308 (2007). She focused her argument on whether the police had reasonable suspicion to do so at that point. It is perhaps for this reason that the judge did not make findings on precisely what happened after the defendant began to run, for example: "how long it took" after the cruiser stopped and the defendant began running for the officers "to get out of the car"; "how far away" the officers were when they "began to chase the defendant"; "how far away" the officers were when they observed the defendant holding his hand to his waist; "how far away" the officers were when the defendant scaled the fence; or "whether there were other persons or activities present in the area." *People* v. *Mamon*, 435 Mich. 1, 20 (1990) (Brickley, J., concurring). Foreclosed as we are from reviewing the record for uncontested facts on any of these or other relevant points, on the "scant record" of the judge's findings, *id.*, I cannot agree with the defendant that he was seized before he was grabbed.

---

the defendant had thrown away while being chased on foot by two police officers. However, a majority of the justices agreed that "a constable jumping out of a car to give chase on foot just a few feet behind a pedestrian can, even absent a command to halt, convey to a reasonable person not only an intent to detain, but also that detention is imminent." *Id.* at 18 (Brickley, J., concurring). See *id.* at 27 (Archer, J., dissenting) ("presence of a uniformed police officer emerging from a marked police vehicle into an unrestrained, full sprint in pursuit of a citizen, communicates two things: a show of police authority and an intent to capture or detain the person"); *id.* at 29 (Levin, J., separate opinion) (same). Casting the deciding vote, the concurring justice concluded that the defendant was "seized" during the chase before he was "physically captured by the police," but it was "not clear from the record, however, whether the defendant was seized *before* he discarded the bag" (emphasis in original). *Id.* at 20 (Brickley, J., concurring).