Before us are the Commonwealth's interlocutory appeal from the partial allowance of the juvenile's motion to suppress and the juvenile's cross appeal from the partial denial of that motion. We affirm.
We recite the judge's subsidiary findings of fact, supplementing them with uncontroverted testimony from Boston Police Officer Lopes, whose testimony the judge explicitly credited. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007).
While working in plainclothes as a member of the "Youth Violence Strike Force" on April 9, 2017, Officer Lopes received a text message from his supervisor stating that an individual dressed in a red hooded sweatshirt (hoodie) with a white drawstring was suspected of having a firearm. According to the message, the individual was with another person who was dressed all in black, and the two were in the area of Roxbury Crossing heading towards Heath Street. The supervisor's text further identified the individual by including a still image of a young black man wearing a red hoodie with a white drawstring. The image showed the individual's face and included the slogan "Night at the Roxbury." The image was taken from a "Snapchat"[3] video showing the individual wearing the red hoodie displaying what appeared to be a firearm.
After receiving this text message and image, Officer Lopes and his partner, who were wearing tactical vests bearing the "Boston Police" logo, drove in an unmarked car towards Roxbury Crossing, and the Bromley-Heath housing development. As they turned onto Parker Street, a person wearing all black walked right in front of their car. To his left, Officer Lopes saw the juvenile, who was wearing a red hoodie with a white drawstring. The juvenile appeared to be sixteen or seventeen years old. Officer Lopes and his partner got out of the car. The juvenile picked up his pace, walking away from the officers, and Officer Lopes (who was about sixty to seventy feet away from the juvenile) called out, "Hey, kid." The juvenile "looked back and took off running" while holding the right side of his waistband. Officer Lopes pursued on foot, losing sight of the juvenile briefly (after which the juvenile ran "normal[ly]"), but eventually catching up to the juvenile when his pants caught on a fence and one of his shoes fell off. The juvenile was nervous and sweating. Officer Lopes "grabbed him and [ ] stood right next to him" as his partner continued to run towards them. The juvenile spontaneously said, "I don't have a gun." Officer Lopes asked, "Who mentioned anything about the gun?" and the juvenile replied, "That's the reason why you chasing me." At that point Officer Lopes's partner arrived, and the juvenile was handcuffed and formally arrested.[4]
The juvenile contends that he was seized in the constitutional sense when Officer Lopes yelled out "Hey, kid." The Commonwealth asserts that the motion judge was correct in concluding that the juvenile was not seized until Officer Lopes grabbed him at the fence. To determine "whether the actions of the officers in stopping the [juvenile] were constitutionally permissible, we must first identify the moment when the seizure occurred." Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007), citing Commonwealth v. Sykes, 449 Mass. 308, 314 (2007), and Commonwealth v. Barros, 435 Mass. 171, 173 (2001). "A person is seized by the police only when, in light of all of the attending circumstances, a reasonable person in that situation would not feel free to leave." DePeiza, 449 Mass. at 369, citing Commonwealth v. Stoute, 422 Mass. 782, 786 (1996).
For the reasons explained in Commonwealth v. Sykes, 449 Mass. at 311-313, we are persuaded that the juvenile was not seized when Officer Lopes yelled, "Hey, kid." The officers were in plain clothes, did not activate their lights, and made no effort to impede the juvenile's movement or direction. The juvenile plainly felt free to leave because his response was to step up his pace as he walked away and then to run. In addition, the phrase "Hey, kid" would not objectively be understood as a command to stop, nor does the phrase carry a compulsory dimension. Contrast Commonwealth v. Barros, 435 Mass. 171, 172, 174 (2001) (demanding to speak to juvenile and saying "come here" had compulsory dimension).
Relying primarily on Commonwealth v. Franklin, 456 Mass. 818, 823 (2010), the Commonwealth argues that the juvenile was not seized even once the officers gave chase. However, Franklin is not entirely on all fours; unlike in Franklin, here the officers had left their car and called out to the juvenile before he began to run. Compare Commonwealth v. Jones-Pannell, 472 Mass. 429, 430-431, 433 (2015) (defendant's jogging was prompted by officers asking to speak with him, getting out of cruiser, and calling, "Wait a minute"). But we need not decide whether these factual distinctions matter here because, even assuming that the juvenile was seized at the moment the officers gave chase, see Sykes, 449 Mass. at 314, the officers at that point had reasonable suspicion to justify stopping the juvenile for a threshold inquiry. See Commonwealth v. Watson, 430 Mass. 725, 729 (2000) ("An officer has the right to 'make a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime' " [citation omitted] ).
Not only did the juvenile's clothing match that of the person in the image, he was located sufficiently near in time and place to the location depicted in the Snapchat video, a second person matching the (albeit) slim description police had was also present, Officer Lopes observed that the juvenile was too young to lawfully possess a firearm, and the juvenile's reaction to the officer's rather benign approach could be considered to reflect his consciousness of guilt. See Commonwealth v. Wilson, 52 Mass. App. Ct. 411, 414-415 (2001) (flight not prompted by inappropriate police action could be considered one factor in determining whether reasonable suspicion existed when police began to chase defendant). Although "[r]easonable suspicion may not be based on good faith or a hunch," "[s]eemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry" (citation omitted). Commonwealth v. Grandison, 433 Mass. 135, 139 (2001). We note further that Officer Lopes had seen an image of the suspect with which he could compare the juvenile as he approached, and that the judge had both the image and the juvenile before him during the evidentiary hearing.
Concluding as we do that there was reasonable suspicion when the police gave chase, it necessarily follows that there was reasonable suspicion when the officer grabbed the juvenile at the fence; by then, the juvenile had been running in a way that, in the officer's experience, strongly suggested he was holding onto a firearm in his waistband.
We now turn to the Commonwealth's arguments that the juvenile's statement "That's the reason why you chasing me" either (a) were not the product of custodial interrogation, or (b) fell within the public safety exception. As to the first of these, the Commonwealth contends both that the juvenile was not in custody when the statement was made, and that there was no interrogation or its functional equivalent. We address each of the Commonwealth's contentions in turn.
To determine whether there was custodial interrogation, we look at "how a reasonable person in the juvenile's position would have understood his situation" (citation omitted). Commonwealth v. Ira I., 439 Mass. 805, 814 (2003). Among other things, we consider where the interrogation took place; "whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect"; the tone and nature of the questioning; and "whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest" (citation omitted). Commonwealth v. Brum, 438 Mass. 103, 111-112 (2002). Here, the juvenile was grabbed by Officer Lopes after a foot chase involving two police officers, the other of whom was quickly approaching. The officer physically restrained the juvenile so that he could handcuff and arrest the juvenile once his partner arrived. The juvenile's pants were down, and his shoe was off. The officer's pointed question used the definite article when asking about "the gun," lending force to the idea that the juvenile was suspected of possessing contraband. Taking these facts together, we agree with the motion judge's conclusion that a juvenile in these circumstances would have reasonably believed he was in custody or otherwise deprived of his freedom of action in a significant way. See Miranda v. Arizona, 384 U.S. 436, 444 (1966).
We disagree with the Commonwealth's contention that Officer Lopes's question "Who said anything about the gun?"[5] was neither "express questioning [n]or its functional equivalent." Commonwealth v. Larkin, 429 Mass. 426, 431 n.4 (1999), quoting Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). The Commonwealth has not pointed us to, nor have we found, any case where we have held that a statement grammatically phrased as a question such as we have here is neither express questioning nor its functional equivalent. To the contrary, Commonwealth v. Ferrer, 68 Mass. App. Ct. 544, 545 (2007), and Commonwealth v. Gittens, 55 Mass. App. Ct. 148, 149-150 (2002), upon which the Commonwealth relies, both involved only declaratory statements by police officers -- not questions.
Finally, it is true, as the Commonwealth argues, that the public safety exception allows police to ask "suspects questions dedicated to locating [ ] missing weapons without being required to give Miranda warnings," Commonwealth v. Guthrie G., 66 Mass. App. Ct. 414, 417 (2006), in circumstances where concern for public safety is paramount, Commonwealth v. Dillon D., 448 Mass. 793, 796 (2007). However, the motion judge did not err in concluding that the exception does not apply on the facts presented in this case because Officer Lopes's question was not directed to locating the gun.
For these reasons, the order denying in part and allowing in part the juvenile's motion to suppress is affirmed.
So ordered.
Affirmed.

See F.K. v. S.C., 481 Mass. 325, 327 (2019).

Officer Lopes testified that subsequently the police found a black .22 caliber firearm on the ground along the route of the chase.

In its brief the Commonwealth substitutes the indefinite article "a" in this question for the definite article "the" that Officer Lopes testified he used.