NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-935

COMMONWEALTH

vs.

LEVON PIRES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted by a District Court jury of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n), and carrying a firearm without a license, G. L. c. 269, 10 (a). On appeal, the defendant contends that his motion to suppress should have been allowed and that the trial judge committed error by allowing the Commonwealth to introduce evidence that a shooting had taken place in the area near the defendant's home the day prior to the defendant's arrest and certain video evidence. We affirm.

Motion to suppress. "[W]e accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of

law" (quotation and citation omitted).  Commonwealth v. Meas, 467 Mass. 434, 440 (2014), cert. denied, 574 U.S. 858 (2014). We summarize the facts as found by the judge, supplemented by undisputed facts that the judge implicitly credited and are consistent with his ruling.  See Commonwealth v. Depiero, 473 Mass. 450, 452 n.3 (2016); Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  In addition, we review de novo the surveillance recordings and other documentary exhibits introduced in evidence at the hearing.  See Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018).

The judge found that Detective Almeida of the New Bedford police department, after seeing the defendant, got out of his vehicle and approached the defendant.  Almeida was wearing plain clothes with a police vest with white lettering, and his firearm was holstered.  Almeida said, "What's good Levon?" and the defendant ran.  Almeida began to run after the defendant. Seconds later, Almeida saw the defendant with a gun and a magazine attached to the gun.  At that time, Almeida sent a radio transmission stating, "[H]e's got a gun," and also yelled at the defendant to "drop the gun."  The defendant was ultimately apprehended and arrested.

Because suppression is limited to evidence recovered due to an unconstitutional search or seizure, we must consider when the seizure occurred and whether it was constitutional.  See

2

Commonwealth v. Palmer, 106 Mass. App. Ct. 47, 53, 55 (2025). "To decide whether a person has been 'seized' in the constitutional sense, 'we look at the totality of the circumstances to determine whether a member of law enforcement has "engaged in some show of authority" that a reasonable person would consider coercive; that is, behavior "which could be expected to command compliance, beyond simply identifying [himself or herself] as police."'" Id. at 53, quoting Commonwealth v. Matta, 483 Mass. 357, 362 (2019). Pursuit by the police is not necessarily a seizure. "[T]he inquiry must be whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay." Matta, supra at 363. "[F]ollowing a person, presumably at a rate of speed sufficient to keep him in sight, does not amount to a seizure absent some additional assertion of authority, by direct verbal communication ('stop') or otherwise (blocking, use of flashers)." Commonwealth v. Franklin, 456 Mass. 818, 822 (2010).

Almeida's pursuit of an already running defendant did not immediately constitute a seizure, as there was no evidence of "some additional assertion of authority" or even that the defendant knew Almeida was chasing after him. Id. The judge found that the defendant never looked back and that the evidence did not show that the defendant was aware that he was being

3

pursued.  We agree with the motion judge that once Almeida commanded the defendant to "drop the gun," a seizure occurred.

Furthermore, the seizure was constitutional, as it was supported by a reasonable suspicion that the defendant was unlawfully carrying a firearm without a license.  See Commonwealth v. Grandison, 433 Mass. 135, 139 (2001).  "Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience."  Id.  "The test is an objective one" (citation omitted).  Id.  At the time the pursuit began, and prior to seeing the defendant with the firearm, Almeida had entered the defendant's name into the Criminal Justice Information System database and had learned that the defendant did not have a Massachusetts license to carry firearms.  Thus, at the time Almeida saw the defendant with a firearm and commanded him to drop the gun, there was not only reasonable suspicion to stop the defendant but also probable cause to believe that he was committing a crime.[1]  The motion to suppress was properly denied.

---

[1] The defendant contends that the judge found that Almeida saw the defendant's firearm prior to running after him, and that this finding was clearly erroneous.  As Almeida did not seize the defendant until he commanded the defendant to "drop the gun" and the seizure was constitutional, we need not analyze the defendant's contention.

Trial evidentiary rulings. The defendant argues that the evidence that a person had been shot the day before "in the South End" where the defendant lived was improperly admitted prior bad act evidence. Additionally, the defendant contends that the evidence posed a risk of unfair prejudice greater than the evidence's probative value. Because the defendant preserved these issues via objection at trial, "we review the proceedings below for prejudicial error" and note that "[a]n error is not prejudicial if it did not influence the jury, or had but very slight effect" (citations and quotation omitted). Commonwealth v. Rodriguez, 92 Mass. App. Ct. 774, 780 (2018).

No prejudicial effect is apparent here. Video evidence admitted at trial clearly shows the defendant throw a glittery object over the fence in the same area where the police testified to finding a gun. Therefore, even if admission of the prior shooting was error, we conclude that the defendant was not prejudiced. See Commonwealth v. Imbert, 479 Mass. 575, 587 (2018) (finding no prejudice where issue was collateral to defendant's guilt and "likely did not matter to the jury's verdict").

Furthermore, evidence of the prior shooting was admissible to provide the jury with background information to understand the reason why the police were monitoring certain online activity. See Commonwealth v. Cohen, 412 Mass. 375, 393 (1992).

5

"Police are entitled to explain the motivations for their conduct in carrying out an investigation," Commonwealth v. Tanner, 66 Mass. App. Ct. 432, 438 (2006), and it is within the "sound discretion of the trial judge" to determine "relevance, probative value, and prejudice," Commonwealth v. West, 487 Mass. 794, 805 (2021).

The evidence of the prior shooting was highly relevant for the jury to understand why the police monitored a Snapchat account and what led the police to place the defendant under surveillance. Certainly, a request for a limiting instruction by the Commonwealth or the defendant would have been the better course. See Commonwealth v. Peno, 485 Mass. 378, 395-396 (2020) (noting value of contemporaneous limiting instruction in mitigating risk of prejudice); Commonwealth v. Bryant, 482 Mass. 731, 735 (2019) (effectiveness of limiting instructions should be considered in balancing probative value versus unfair prejudice); Commonwealth v. Almeida, 479 Mass. 562, 569 (2018) (limiting instruction to jury both when prior bad act evidence was introduced and in final charge minimized prejudicial effect from admission). But even without a limiting instruction, we conclude that the judge properly weighed the probative value of the evidence against the prejudice to the defendant. While the judge admitted the evidence of the prior shooting, the judge did not permit the Commonwealth to introduce evidence that the

6

defendant was "an alleged associate" of the person who was shot the day before.  See West, 487 Mass. at 807.  We discern no error.

We further note that the defendant's characterization of this evidence as prior bad act evidence is inapt.  Prior bad act evidence is necessarily tied in some manner to the defendant. See, e.g., Commonwealth v. Lora, 494 Mass. 235, 246 (2024) (analyzing as prior bad act evidence social media posts "referenc[ing], albeit vaguely, past actions by the defendant that suggest involvement in misconduct").  As the defendant concedes, "there was no connection between the evidence of the prior shooting and [the defendant]."  And once admitted, the Commonwealth limited its use of the evidence to the purpose of explaining the police conduct.  Cf. Commonwealth v. Bregoli, 431 Mass. 265, 278 (2000), citing Commonwealth v. Johnson, 412 Mass. 318, 321-324 (1992) ("prosecutor may not present to jury evidence admitted for limited purpose as if it were substantive evidence").  Furthermore, to the extent it is more probative than prejudicial, prior bad act evidence is only inadmissible if demonstrating a defendant's bad character or propensity to commit the charged crime.  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014); Mass. G. Evid. § 404(b)(1) (2025).  Here, we discern nothing in the record suggesting that the evidence of the prior shooting was admitted for either purpose.

7

Lastly, we reject the defendant's contention that the video evidence was not properly authenticated. A video recording can be authenticated by "having an eyewitness testify that the video is a fair and accurate representation of what he [or she] saw on the day in question." Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 586 (2017). During direct examination, while Almeida viewed the video evidence, he provided testimony identifying the setting, the defendant, and the police officers portrayed in the video recording, and confirmed that it was a "fair and accurate" representation of what occurred at that location on the day in question. The video evidence was properly authenticated.

Judgments affirmed.

By the Court (Neyman, D'Angelo & Allen, JJ.[2]),

Clerk

Entered: January 6, 2026.

---

[2] The panelists are listed in order of seniority.